BERGEN COUNTY COURT OF COMMON PLEAS.

THE VILLAGE OF RIDGEWOOD, A MUNICIPAL CORPORA-
TION OF THE COUNTY OF BERGEN, AND JAMES S.
ANDERSON, DIRECTOR OF PUBLIC SAFETY, COM-
PLAINANTS-RESPONDENTS, v. ANDREW M. HOWARD,
DEFENDANT-APPELLANT.

Decided June 13, 1935.

For the respondents, *Thomas L. Zimmerman.*

For the appellant, *Chandless, Weller & Selser (Mr. Julius Kramer).*

LEYDEN, C. P. J.    This is an appeal by a member of the police department of the village of Ridgewood from the determination of the director of public safety in which the appellant was found guilty of departmental charges and demoted from the rank of detective to that of patrolman.

The appeal comes here by virtue of the provisions of chapter 29 (*Pamph. L.* 1935; *N. J. Stat. Annual* 1935, § *136-1603a*), whereby the Home Rule act (*Pamph. L.* 1917, *ch.* 152; *Cum. Supp. Comp. Stat.* 1911-1925, *p.* 2071, § *136-101*) is amended by the insertion of a new section known as 3A of article 16, providing: "If any person shall be removed from office or employment in any such police department, or from the police force of any municipality * * * such person may appeal such removal to the Court of Common Pleas

of the county in which such municipality is situated, and such court shall hear such case *de novo,* and may order such person reinstated in his office or employment if such court should find that such person was not guilty of the charges upon which he was removed, or may make such other order as such court may decide is proper and just under the circumstances."

At the outset the village moved to dismiss the proceedings upon the ground that this court lacked jurisdiction. The argument is, that the legislature intended discharge or dismissal by the phrase "removal from office or employment" and therefore a reduction in rank of a member of a police department is not such a removal as contemplated by the statute. Since the determination of this question adversely to the appellant would be dispositive of the matter, I shall consider it first.

The sixteenth article of the Home Rule act (*Cum. Supp. Comp. Stat.* 1911-1925, *p.* 2153, § *136-1601) relates to municipal police. By the first section thereof, power, by ordinance, is granted to the governing body of every municipality to establish, maintain, regulate and control a police department. By the third section the officers and men employed in municipal police departments shall severally hold their respective offices and continue their respective employment during good behavior, efficiency and residence in the municipality, and no person shall be removed from office or employment in or from the police force of any municipality for political reasons or for any other cause than incapacity, misconduct, non-residence or disobedience of the just rules and regulations.

By virtue of section 5 (*Cum. Supp. Comp. Stat.* 1911-1925, *p.* 2161, § *136-1705) no person, whether officer or employe, shall be removed from office or employment therein except after just cause and then only after written charge or charges of the causes of complaint shall have been preferred against such officer or employe signed by the complainant and filed with the municipal officer having charge of the department, and after the charges shall have been publicly examined upon reasonable notice.

The legislative intention was to give tenure to members of municipal police departments. It seems to me clear that the legislature, by the wording of these sections, ordained that the members of a police department, whether patrolmen or holding superior rank, should be considered as holding public office and there should be no removal therefrom except for the causes set forth in the statute.

By chapter 29 (*Pamph. L.* 1935, *supra*), the legislature created an intermediate step, a trial *de novo* in this court, for the benefit of aggrieved members of police departments. Prior to the enactment of this legislation, the remedy of a policeman removed from office or employment was by writ of *certiorari*. This review of the departmental trial was expensive and if, on questions of fact, there was evidence to support the finding of the statutory tribunal, the Supreme Court would not disturb it and thus substitute its judgment for that of the municipal officials. The legislature passed this act to provide for an intermediate and just disposition of such controversies on both the law and fact before an unprejudiced court not hampered by local influences. Of course, the remedy by writ of *certiorari* still exists.

If it were necessary for me to rely upon my own construction of the statute I would hold that the demotion of a member of a police department from detective to patrolman, an office inferior in dignity, dissimilar in its work and with decreased compensation, is a removal "from office or employment."

The question, however, has been judicially determined. It is well settled that a policeman is a public officer. *Hoboken* v. *Gear*, 27 *N. J. L.* 265; *Cook* v. *Ramsey*, 86 *Id.* 263; 90 *Atl. Rep.* 265; *Van Sant* v. *Atlantic City*, 68 *N. J. L.* 449; 53 *Atl. Rep.* 701; *Moore* v. *Borough of Bradley Beach*, 87 *N. J. L.* 391; 94 *Atl. Rep.* 316; *Speck* v. *Borough of Fairview*, 7 *N. J. Mis. R.* 410; 145 *Atl. Rep.* 618.

In *Michaelis* v. *Jersey City*, 49 *N. J. L.* 154; 6 *Atl. Rep.* 881, Mr. Justice Reed, for the Supreme Court, construed the terms of an act (*Pamph. L.* 1885, *p.* 130; *Comp. Stat., p.* 2391, § 258) almost identical in phraseology with that now under scrutiny. Michaelis was an engineer of fire company

number 1 and was removed by the board of fire commissioners to the position of stoker of engine company number 2. The Supreme Court held that his employment as engineer was protected by the terms of the act and since the place of stoker was a different position, inferior in dignity, dissimilar in its work and attended with decreased wages, it was within the meaning of the act, a different employment or office and that an attempt to transfer him without his consent to the position of stoker was a removal "from office or employment." The act of 1885 and the present act are identical in the use of the phrase "and no person shall be removed from office or employment." I take it that the Home Rule act of 1917 (*Cum. Supp. Comp. Stat.*, p. 2071, § *136-101) was compiled from this and similar statutes.

In *Douglass* v. *Mayor, &c., of Jersey City,* 53 *N. J. L.* 118; 20 *Atl. Rep.* 831, it was held that a resolution passed without notice to Douglass, reducing him from a detective officer in the police department to a roundsman, with decreased pay, was of no validity under the act of 1886, page 48, an act almost identical in phraseology with that relating to fire departments cited in the Michaelis case, *supra.* See *Leary* v. *Mayor, &c., of the City of Orange,* 59 *N. J. L.* 350; 35 *Atl. Rep.* 786, where it was sought to reduce a police sergeant to the inferior position of patrolman. See, also, *Hansen* v. *Van Winkle,* 76 *N. J. L.* 443; 69 *Atl. Rep.* 1011; *Gutheil* v. *Nelson,* 86 *N. J. L.* 1; 91 *Atl. Rep.* 93.

Counsel for the village cites in support of his contention *McManus* v. *City of Newark,* 49 *N. J. L.* 175; 6 *Atl. Rep.* 882, but that case is not in point, for there no other or extra compensation was fixed or paid to officers assigned to detective duty. I conclude, therefore, that the demotion of a detective member of a police department from that office to a different position, inferior in dignity, dissimilar in its work and attended with decreased wages, is a removal from office or employment within the meaning of chapter 29, *Pamph. L.* 1935, *supra.* This leads me to the merits of the controversy.

The village of Ridgewood, by ordinance adopted February 1st, 1921, established a police department. By amendment

adopted February 21st, 1928, the first section of the original ordinance was changed to provide that the police department of the village shall consist of a chief of police, a captain of police, and four lieutenants of police, and such number of police detectives and patrolmen and other employes as shall be deemed necessary by the board of commissioners to properly preserve the peace of the village. On November 28th, 1933, Andrew M. Howard was appointed detective of the police department by a resolution of the board of commissioners. At the time of his appointment he was instructed that he was to take orders from no one, save the director of public safety, called by courtesy "mayor," and the chief of police. He had no regular tour of duty although he was required to work the statutory period of eight hours per day. If the business of the department required, he was expected to occupy himself with his duties until they were completed, although it might be necessary for him to work continuously for twelve, fourteen, sixteen or even twenty-four hours. He was to dedicate his entire time to the service of the village, to be called upon at any hour of the day or night should the occasion arise. With this in mind he assumed the duties of the office and worked on an average of from fourteen to sixteen hours per day.

On March 5th, 1935, he reported at police headquarters about nine A. M. as was his custom and together with Officer Janas, who was assigned to assist him, performed the police duties requiring his attention. These duties caused the appellant and Officer Janas to visit the New York state police at Monroe. While returning therefrom Janas expressed the desire for practical experience in the selection and classification of fingerprints. It was agreed between them that upon their return to headquarters Janas would select prints from the files which he thought were material in some pending investigations and Howard would then review the work done and determine its accuracy. They arrived at the police station about three-forty-five P. M. Janas went to the fingerprint room and Howard, at the challenge of the janitor of the building, started playing pool on the department pool table located in the locker room and within twenty-five feet

of the station house desk. The game had progressed for about five minutes when in walked the director of public safety, Mr. Anderson. The detective saluted his superior, bade him the time of the afternoon and went on with the game. Anderson departed and on the 12th day of March, 1935, the appellant was served with written charges signed by a lieutenant of police at the command of the director of public safety. He was accused of (1) neglect of duty "in that he did remain in the locker room at police headquarters for some time and there engaged in a game of pool, thereby neglecting duties which should have received his attention at the time, in violation of rule No. 22 of the rules of discipline;" and (2) absence from duty without leave "in that he did remain in the locker room at police headquarters for some time and there did engage in a game of pool without first obtaining leave so to do, in violation of rule No. 9 of the rules of discipline." He was tried upon these charges before the mayor, found guilty and demoted to the office of patrolman. It was admitted that the office of patrolman is different than that of detective; that the former is inferior in dignity, dissimilar in its work and commands less compensation.

The village insists that Howard's indulging in a game of pool on the table provided by the department for that purpose at four o'clock on the afternoon of March 5th, was such neglect of duty and absence from duty as to require his conviction of the charges, and this, in spite of the fact that Howard had labored efficiently and conscientiously for from fourteen to sixteen hours per day since his appointment, without complaint, and had not reported off duty on the day in question until eleven P. M.

I am urged to convict him because on the day he spent approximately one-half hour playing pool with the janitor there were supposedly thirteen unsolved crimes in the village to which the detective should have been giving his undivided attention although it seems to be generally admitted that nothing further could be done in these investigations and that the department was merely marking time and waiting for a "break" in the cases.

In playing the game of pool under the facts as presented here Detective Howard was neither neglecting his duty nor absent therefrom. He was in the station house within easy call of the desk. He was on duty although no business of the department required his immediate attention.

I am of the opinion that a man who conscientiously and efficiently renders excellent service over a period of years should not be so harshly dealt with under the circumstances. I have no hesitancy in finding Andrew M. Howard not guilty of the charges presented against him and I shall order his restoration to the rank of detective to take effect as of the day of his demotion, with back pay.

This is the first case coming to the court under the new statute and some confusion has arisen as to the procedure to be followed by those seeking the benefit thereof. I think the proper method of procedure is for the appellant to give written notice of appeal to the municipal official or officials sitting in judgment below and then to invoke the jurisdiction of the Court of Common Pleas by a petition setting forth the necesary facts, and upon said petition to take an order directing the municipal officials to transmit forthwith to the clerk of this court the written charge or charges, the notice of hearing and such other documents as may be material. Provision should be made in the order fixing the time for the hearing of the appeal *de novo* and granting to the appellant and respondent process of subpoena out of this court.

An order will be signed in conformity with the views herein expressed.